IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE CHAMBERLAIN GROUP, INC., | ) | |
| | ) | Civil Action No.: 16-cv-6094 |
| Plaintiff, | ) | |
| v. | ) | The Honorable Harry D. Leinenweber |
| | ) | |
| TECHTRONIC INDUSTRIES CO. LTD., | ) | Magistrate Judge Sidney Schenkier |
| TECHTRONIC INDUSTRIES NORTH AMERICA, | ) | |
| INC., ONE WORLD TECHNOLOGIES INC., OWT | ) | |
| INDUSTRIES, INC., ET TECHNOLOGY (WUXI) | ) | **JURY TRIAL DEMANDED** |
| CO. LTD., AND RYOBI TECHNOLOGIES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, the Chamberlain Group, Inc. ("CGI"), complains against Defendants,

Techtronic Industries Co. Ltd., Techtronic Industries North America, Inc., One World

Technologies Inc., OWT Industries, Inc., Et Technology (Wuxi) Co. Ltd., and Ryobi

Technologies, Inc. ("Defendants"), as follows:

## GENERAL ALLEGATIONS

1.      CGI is a company incorporated under the laws of the State of Connecticut with its

principal place of business in Elmhurst, Illinois.

2.      CGI was founded in 1906 and offers innovative access control devices including

residential garage door openers, commercial door operators, gate access solutions, home

connectivity products, and related accessories.  CGI is the leader in residential garage door

openers and commercial door operators, with products grounded in safety, security, connectivity,

and reliability.

3.     Amongst other product offerings, CGI develops, manufactures, and sells the well-known LiftMaster® products, which have been recognized as the number one brand of professionally installed garage door openers as well as highly preferred Do-It-Yourself Chamberlain® branded products, which are present in a majority of garages in America.  As an inventive company, always seeking ways to better serve its customers and consumers with additional features and functionality (in addition to safety and security), CGI also offers its MyQ® technology for remote monitoring and control of the home and business, including garage doors, lights, and gates, both as a retrofit for most major brands of garage door openers and on LiftMaster® and Chamberlain® MyQ®-enabled product lines.

4.     In order to continually improve its product offerings for its customers and consumers, CGI invests substantial resources in research and development of access control products—including in developing products having new and improved functionality, quality, and security.  Over the years, CGI has received accolades for being an innovation leader in this field of technology and has received numerous seminal and valuable patents for its inventions.  CGI relies upon its patents to maintain and protect its reputation as the industry leader in access control technology, and to protect its customers and consumers from inferior and/or imitation devices that may suffer from safety, security or other issues.

5.     CGI's patents in this field include U.S. Patent No. 7,339,336 (referred to herein as the '336 patent), which claims, e.g., inventions for a system for use with a movable barrier operator having a normal mode of operation and a user-initiable learning mode of operation that comprises in the normal mode of operation and regardless of whether the user-initiable learning mode of operation has been previously initiated, monitoring at least one parameter that corresponds to force as applied to a movable barrier to selectively cause the movable barrier to move, automatically changing an excess force threshold value in response to the monitored

parameter to provide an updated excess force threshold value, using the updated excess force threshold value and the monitored parameter to determine when excess force is being applied to the movable barrier via the movable barrier operator, and taking a predetermined action when excess force is being applied to the movable barrier via the movable barrier operator.

6. The '336 patent's inventions provide many new and useful features. For example, the '336 patent describes a novel method of accounting for forces that are exerted upon a garage door that may change over time, e.g., as the springs of the door age and lose strength. With the '336 patent's inventions, a garage door can be initially configured to respond to a low resistance force, e.g., to account for the upward force of objects or persons underneath a garage door as it is closing, and to adaptively change this force threshold as the downward force of the garage door increases.

7. CGI's patents in this field further include U.S. Patent No. 7,161,319 (referred to herein as the '319 patent), which claims, e.g., inventions for an improved garage door opener comprising a motor drive unit for opening and closing a garage door, having a microcontroller and a wall console having a microcontroller, where the microcontroller of the motor drive unit is connected to the microcontroller of the wall console by means of a digital data bus.

8. The '319 patent's inventions provide many new and useful features. For example, the '319 patent describes a novel method of connecting a wall console through a digital data bus, thus increasing the functionality that a wall console may offer, e.g., with respect to the number of programmable options and bidirectional communications. The '319 patent's inventions also avoids the problems with prior art connections such as short circuits in the wiring developing and operating a garage door undesirably.

9. CGI's patents in this field further include U.S. Patent No. 7,196,611 (referred to herein as the '611 patent), which claims, e.g., inventions for a barrier movement operator

3

comprising a controller, responsive to user input signals and operational signals for selectively energizing a motor to open and close a barrier, a remote input/output unit connected to the controller and remote therefrom for receiving user inputs and for displaying status of portions of the barrier movement operator, the controller for identifying faults in the operation of the barrier movement operator, and apparatus for communicating the identities of faults in the operation of the barrier movement operator to the remote input/output unit and for displaying the identified faults at the remote input/output unit.

10.     The '611 patent's inventions provide many new and useful features.  For example, the '611 patent describes a novel method for communicating and monitoring faults in the operation of a garage door at a remote input/output unit.  The '611 patent also provides users with the security and assurance of knowing whether faults have prevented their garage door from completing the intended movement.

11.     Together, the '336, '319, and '611 patents are referred to herein as the "Asserted Patents."  The United States Patent and Trademark Office ("USPTO") examined the Asserted Patents over a period of many years.  The USPTO considered whether the inventions that they describe and claim were both new and also not obvious in light of prior patents, articles, inventions, and other references.  The USPTO also rigorously assessed the language used to describe and claim the inventions.  After this thorough examination, the USPTO determined that the inventions were inventive and patentable.

12.     The USPTO considered and examined the '336 patent for over a three year period, starting when the patent was filed on October 22, 2004.  The '336 patent includes 40 distinct inventions/claims.

13.     The USPTO considered and examined the '319 patent for over a three year period, starting when the patent was filed on November 19, 2003.  The '319 patent includes 16 distinct inventions/claims.

14.     The USPTO considered and examined the '611 patent for over a three year period, starting when the patent was filed on April 17, 2003.  The '611 patent includes 25 distinct inventions/claims.

15.     On information and belief, Defendant Techtronic Industries Co., Ltd. ("TTI") is a Hong Kong based global power equipment and floor care company founded in 1985 with current annual revenue of approximately $5 Billion Dollars.  See

http://www.ttigroup.com/en/investor_relations/financial_summary/financial_highlights/index.php?cat=fullyear.  On information and belief, it has its principal place of business at Unit B-F 24/F CDW Building, 388 Castle Peak Road, Tsuen Wan, New Territories, Hong Kong. On information and belief, TTI makes 74.9% of its sales in North America and 78.8% of its sales are in the power equipment, accessories and hand tools area into which the Accused Controller Products now fall.  See

http://www.ttigroup.com/en/investor_relations/financial_summary/turnover_breakdown_analysis.php?cat=fullyear.

16.     On information and belief, Techtronic Industries North America, Inc. is a wholly owned subsidiary of the Hong Kong entity TTI and is a corporation organized under the laws of Delaware, having a principal office located at 303 International Circle, Suite 4900, Hunt Valley, Maryland 21030.

17.     On information and belief, One World Technologies Inc. is a Delaware corporation with its principal place of business at 1428 Pearman Dairy Road, Anderson, South Carolina 29625.

18.     On information and belief, OWT Industries Inc. is a Delaware corporation having its principal place of business at 225 Pumpkintown Highway, Pickens, South Carolina.

19.     On information and belief, Et Technology (Wuxi, Co., Ltd.) is a Chinese corporation with its principal place of business at Xiqun Road (East Section), Xinqu Meicun Industrial Cluster Zone Wuxi 214112 Zhejiang China.  On information and belief, all of the Accused Controller Products are made by Et Technology in China and are later imported into the United States by Et Technology and TTI.

20.     On information and belief, Ryobi Technologies, Inc. is a corporation organized under the laws of Delaware, having a principal office located at 1428 Pearman Dairy Road, Anderson, South Carolina 29625.

21.     On information and belief, Defendants jointly make, use, sell, offer for sale or import the Ryobi Ultra-Quiet Garage Door Opener, Model No. GD200 ("Accused Controller Products").

22.     The Accused Controller Products are now being offered for sale nationwide. Sales of this garage door opener will damage CGI's hard-earned position in the marketplace and good reputation and irreparably harm CGI in other ways.

23.     Defendants' actions have caused CGI harm, and will cause further harm to CGI if they continue. In addition, Defendants' knowing acts of infringement will frustrate CGI's ongoing strong business relationships, contracts, and potential contracts, with resulting lost sales and profits, and otherwise are or will cause substantial harm to CGI's business.

24.     As a result of Defendants' actions, CGI was forced to file this lawsuit to protect its patented innovations and its reputation as the leader in the control access industry.

## JURISDICTION AND VENUE

25.     This is an action for patent infringement arising under the Patent Laws of the

United States, 35 U.S.C. §§ 1 *et seq.*  The Court has subject matter jurisdiction over this matter

pursuant to 28 U.S.C. §§ 1331 and 1338(a).

26.     On information and belief, Defendants are subject to personal jurisdiction in the

State of Illinois and the Northern District of Illinois because they are doing and have done

substantial business in this District, including business relating to the sale and distribution of the

Accused Controller Products.  Defendants have continuous and systematic business contacts with

the State of Illinois and directly, or through subsidiaries and intermediaries such as retailers,

conduct business in Illinois by shipping, distributing, offering for sale, selling, and advertising

(including the provision of an interactive web page*, see, e.g.,*:

https://www.ryobitools.com/power-tools/products/list/category/garage-door-opener) the Accused

Controller Products in the State of Illinois and the Northern District of Illinois.  Defendants,

directly, or through subsidiaries and intermediaries such as retailers, have purposefully and

voluntarily placed the Accused Controller Products into the stream of commerce with the

intention and expectation that they will be purchased and used by consumers in the Northern

District of Illinois.  Therefore, the exercise of jurisdiction over Defendants is appropriate under

the applicable jurisdictional statutes and would not offend traditional notions of fair play and

substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and/or

1400(b), because, among other reasons, Defendants are subject to personal jurisdiction in this

judicial district and have committed acts of infringement in this judicial district.

<u>COUNT I</u>

<u>(Infringement of U.S. Patent No. 7,339,336)</u>

28.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

29.     On March 4, 2008, the USPTO duly and legally issued the '336 patent, entitled "*Movable Barrier Operator Auto-Force Setting Method And Apparatus*," to Eric Gregori.  A true and correct copy of the '336 patent is attached as Exhibit A.

30.     CGI is the owner, by assignment, of all right, title and interest in the '336 patent, including the right to recover damages for past infringement.

31.     Defendants have infringed and continue to infringe the '336 patent in this District and throughout the United States by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products, which practice one or more of the claims of the '336 patent.  For example, based on CGI's current investigation, the Accused Controller Products infringe at least claim 7 of the '336 patent as follows:

| Claim 7: A method for use with a movable barrier operator having a normal mode of operation and a user-initiable learning mode of operation, comprising: | Defendants' advertising and product information show how the Accused Controller Products meet this claim element:<br><br>Introducing the next generation of garage door openers with the Ryobi Ultra-Quiet Garage Door Opener. The ultra-powerful motor will quietly open and close large doors with ease due to the 2HPs for faster openings.<br><br>*Ultra-Quiet Garage Door Opener*, Ryobi Power Tools, https://www.ryobitools.com/power-tools/products/details/802 (last accessed May 19, 2016).<br><br>**To set the travel limit for the open position:**<br>• Open the console door.<br>• Press and hold the **UP** button for three seconds. After you release the button, it will begin blinking |

| | |
|---|---|
| | and continue blinking until the travel limit has been set. <ul><li>Press and hold the **UP** button to move the garage door to the open position.</li><li>For fine adjustments, press and release the **UP** or **DOWN** buttons.</li><li>Once the door is in the open position, press the **SET** button to store the travel limit. Once the travel limit is stored, the **UP** button will stop blinking and shine continuously.</li></ul> *Operator's Manual Garage Door Opener GD200* at p. 41, https://manuals.ttigroupna.com/system/files/9593/original/ GD200_698_trilingual.pdf (last accessed May 19, 2016). |
| in the normal mode of operation and regardless of whether the user-initiable learning mode of operation has been previously initiated: | Product testing shows how the Accused Controller Products meet this claim element: Plaintiff performed testing of the Accused Controller Products in normal operating mode:  |
| monitoring at least one parameter that corresponds to force as applied to a movable barrier to selectively cause the movable barrier to move; | Product testing shows how the Accused Controller Products meet this claim element: Plaintiff tested the Accused Controller Products by placing weights on the door itself and then testing whether the head unit could successfully raise and lower the door with the additional weight on the door: |



| | |
|---|---|
| automatically changing an excess force threshold value in response to the monitored at least one parameter to provide an updated excess force threshold value; | Product testing shows how the Accused Controller Products meet this claim element: When 50 pounds of weight were added to the door at once, the head unit attempted to raise the door, but stopped the motor after the door had only partially risen by a very small amount: |



When weights were added to the door, 10 pounds at a time (starting from the door with no additional weight added), and performing two full cycles (up, down, up, down) after each new weight was added, the head unit successfully raised the door each time when there were 10, 20, 30, 40, 50, and 60 pounds of weight. The test results with 60 pounds of weight are depicted below:

Starting position:



Fully raised (first cycle):



Lowered (first cycle complete):



| | |
|---|---|
| | Fully raised (second cycle):<br><br>Lowered (second cycle complete):<br> |
| using the updated excess force threshold value and the monitored at least one parameter to determine when excess force is being applied to the movable barrier via the movable barrier operator; | Product testing shows how the Accused Controller Products meet this claim element:  Continuing the process of adding weights to the door, 10 pounds at a time, when 10 pounds were added to increase the total weight to 70 pounds, the head unit was unable to successfully raise the door: |



| taking a predetermined action when excess force is being applied to the movable barrier via the movable barrier operator. | Product testing shows how the Accused Controller Products meet this claim element:  When 70 pounds were on the door, the head unit stopped the motor with the door only partly raised:  In addition to stopping the motor, the head unit caused the "Set" button to blink and the head unit to emit a constant beeping sound: |



32.     All Defendants have been placed on notice of the '336 patent at least as early as on or about May 25, 2016.

33.     Defendants have also induced and/or are inducing the infringement of the '336 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products.  One or more of the Accused Controller Products, as provided by Defendants to their customers and used as intended and instructed, infringe the '336 patent and Defendants have known of this infringement since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants.  Defendants sold and/or offered for sale one or more of these products, and are continuing to do so to retailers, specifically intending to actively encourage them to sell the infringing devices for use in the United States in a manner that Defendants know to be infringing.  Defendants have also sold and/or offered for sale one or more of these products, and are continuing to do so, to end users and others, specifically intending to actively encourage them to use the infringing devices in the United States in a manner that Defendants know to be infringing.  *See, e.g.,* Defendants' marketing of the Accused Controller Products as depicted in the claim charts above.

34.    Defendants have also contributed to and/or are contributing to the infringement of the '336 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products.  Defendants have made and/or sold these products with knowledge that these products are especially designed for use as an apparatus for use in a patented process and are not staple articles of commerce suitable for substantial noninfringing use.  For example, among other things, Defendants actively and knowingly sell these products and provide the manuals and other documentation for these products to customers and others for use as a component of a patented process.  These products are especially designed for use as an apparatus in a patented process, constitute a material part of the invention, are sold by Defendants for the designed use, and are not a staple article of commerce suitable for substantial noninfringing use.  On information and belief, Defendants' customers and consumers have used these products in the United States in this manner and infringed the '336 patent.

35.    As a result of Defendants' infringement of the '336 patent, Plaintiff has suffered and will continue to suffer damages.  Plaintiff is entitled to recover from Defendants the damages adequate to compensate for such infringement, in an amount to be determined at trial.

36.    Defendants' acts of infringement of the '336 patent herein have been committed and are being committed with full knowledge of Plaintiff's rights in the patent.  On information and belief, Defendants have acted and are continuing to act despite an objectively high likelihood that their actions constituted direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants.  Defendants' acts constitute willful and deliberate infringement, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

37.    Defendants' acts of infringement have caused and will continue to cause irreparable harm to Plaintiff, for which there is no adequate remedy at law, entitling Plaintiff to injunctive relief.

## COUNT II

## (Infringement of U.S. Patent No. 7,161,319)

38.    Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

39.    On January 9, 2007, the USPTO duly and legally issued the '319 patent, entitled "*Movable Barrier Operator Having Serial Data Communication*," to Joseph Ergun and James J. Fitzgibbon.  A true and correct copy of the '319 patent is attached as Exhibit B.

40.    On June 3, 2016, James J. Fitzgibbon, a co-inventor of the '319 patent, executed an Assignment, assigning to CGI, and confirming any previous assignment to CGI of, the entire right, title, and interest in the '319 patent.  The Assignment was recorded with the USPTO on the same day.  Joseph Ergun, the other co-inventor of the '319 patent, had previously assigned his rights in the '319 patent to CGI.

41.    CGI is the owner, by assignment, of all right, title and interest in the '319 patent, including the right to recover damages for past infringement.

42.    Defendants have infringed and continue to infringe the '319 patent in this District and throughout the United States by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products, which practice one or more of the claims of the '319 patent.  For example, based on CGI's current investigation, the Accused Controller Products infringe at least claim 1 of the '319 patent as follows:

| Claim 1: An improved garage door opener comprising | Defendants' advertising and product information show how the Accused Controller Products meet this claim |
| --- | --- |

| | element: |
|---|---|
| | Introducing the next generation of garage door openers with the Ryobi Ultra-Quiet Garage Door Opener. The ultra-powerful motor will quietly open and close large doors with ease due to the 2HPs for faster openings.<br><br>*Ultra-Quiet Garage Door Opener*, Ryobi Power Tools, https://www.ryobitools.com/power-tools/products/details/802 (last accessed May 19, 2016). |
| ==a motor drive unit== for opening and closing a garage door | Defendants' advertising and product information show how the Accused Controller Products meet this claim element:<br><br>Introducing the next generation of garage door openers with the Ryobi Ultra-Quiet Garage Door Opener. ==The ultra-powerful motor== will quietly open and close large doors with ease due to the ==2HPs== for faster openings.<br><br>*Ultra-Quiet Garage Door Opener*, Ryobi Power Tools, https://www.ryobitools.com/power-tools/products/details/802 (last accessed May 19, 2016). |
| said motor drive unit having ==a microcontroller== | Defendants' advertising and product information show how the Accused Controller Products meet this claim element:<br><br><br><br>Main Board<br><br>Internal Photos, Application for Equipment Authorization, |

| | |
|---|---|
| | FCC ID VMZGD200, *available at* https://www.fcc.gov/general/fcc-id-search-page. |
| and a wall console | Defendants' advertising and product information show how the Accused Controller Products meet this claim element:<br><br>**INDOOR KEYPAD**<br>The indoor keypad is installed on the interior of the garage and can be used to open and close the garage door, activate the module ports, and turn the LED lights on and off.<br><br>*Operator's Manual Garage Door Opener GD200* at p. 12, https://manuals.ttigroupna.com/system/files/9593/original/GD200_698_trilingual.pdf (last accessed May 19, 2016).<br><br><br><br>*Operator's Manual Garage Door Opener GD200* at p. 33, https://manuals.ttigroupna.com/system/files/9593/original/GD200_698_trilingual.pdf (last accessed May 19, 2016). |
| said wall console having a | Product testing shows how the Accused Controller |

| microcontroller, | Products meet this claim element: |
|---|---|
| |  |
| | Photograph from Plaintiff's inspection of the Accused Controller Products |
| said microcontroller of said motor drive unit being connected to the microcontroller of the wall console by means of a digital data bus. | Defendants' advertising and product information show how the Accused Controller Products meet this claim element: |
| |  |



*Operator's Manual Garage Door Opener GD200* at p. 33,
https://manuals.ttigroupna.com/system/files/9593/original/
GD200_698_trilingual.pdf (last accessed May 19, 2016).

43. All Defendants have been placed on notice of the '319 patent at least as early as on or about May 25, 2016.

44. Defendants have also induced and/or are inducing the infringement of the '319 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products. One or more of these products, as provided by Defendants to their customers and used as intended and instructed, infringe the '319 patent and Defendants have known of this infringement since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants. Defendants sold and/or offered for sale one or more of these products, and are continuing to do so, to retailers, specifically intending to actively encourage them to sell the infringing devices for use in the United States in a manner that Defendants know to be infringing. Defendants have also sold and/or offered for sale one or more of these products, and are continuing to do so, to end users and others, specifically intending to actively encourage them to use the infringing devices in the United States in a manner that

Defendants know to be infringing. *See, e.g.*, Defendants' marketing of the Accused Controller Produces as depicted in the claim charts above.

45. Defendants have also contributed to and/or are contributing to the infringement of the '319 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products. Defendants have made and/or sold these products with knowledge that these products are especially designed for use as a component in a patented machine and are not staple articles of commerce suitable for substantial noninfringing use. For example, among other things, Defendants actively and knowingly sell these products and provide the manuals and other documentation for these products to their customers and others for use as a component in a patented machine. One or more of these products are especially designed for use as a component in a patented machine, constitute a material part of the invention, are sold by Defendants for the designed use, and are not a staple article of commerce suitable for substantial noninfringing use. On information and belief, Defendants' customers and consumers have used these products in the United States in this manner and infringed the '319 patent.

46. As a result of Defendants' infringement of the '319 patent, Plaintiff has suffered and will continue to suffer damage. Plaintiff is entitled to recover from Defendants the damages adequate to compensate for such infringement, in an amount to be determined at trial.

47. Defendants' acts of infringement of the '319 patent herein have been committed and are being committed with full knowledge of Plaintiff's rights in the patent. On information and belief, Defendants have acted and are continuing to act despite an objectively high likelihood that their actions constituted direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants. Defendants' acts constitute willful and

deliberate infringement, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

48.     Defendants' acts of infringement have caused and will continue to cause irreparable harm to Plaintiff, for which there is no adequate remedy at law, entitling Plaintiff to injunctive relief.

## COUNT III

## (Infringement of U.S. Patent No. 7,196,611)

49.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

50.     On March 27, 2007, the USPTO duly and legally issued the '611 patent, entitled "*Barrier Movement Operator Human Interface Method and Apparatus*," to Eric J. Robb and Mark Andrew Edgington.  A true and correct copy of the '611 patent is attached as Exhibit C.

51.     CGI is the owner, by assignment, of all right, title and interest in the '611 patent, including the right to recover damages for past infringement.

52.     Defendants have infringed and continue to infringe the '611 patent in this District and throughout the United States by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products, which practice one or more of the claims of the '611 patent.  For example, based on CGI's current investigation, the Accused Controller Products infringe at least claim 1 of the '611 patent as follows:

| Claim 1: A barrier movement operator comprising: | Defendants' advertising and product information show how the Accused Controller Products meet this claim element: |
|---|---|
| | Introducing the next generation of garage door openers with the Ryobi Ultra-Quiet Garage Door Opener. The ultra-powerful motor will quietly open and close large |

| | |
|---|---|
| | doors with ease due to the 2HPs for faster openings. *Ultra-Quiet Garage Door Opener*, Ryobi Power Tools, https://www.ryobitools.com/power-tools/products/details/802 (last accessed June 23, 2016). |
| a controller, responsive to user input signals and operational signals for selectively energizing a motor to open and close a barrier; | Defendants' advertising and product information show how the Accused Controller Products meet this claim element:  Main Board Internal Photos, Application for Equipment Authorization, FCC ID VMZGD200, *available at* https://www.fcc.gov/general/fcc-id-search-page. Introducing the next generation of garage door openers with the Ryobi Ultra-Quiet Garage Door Opener. The ultra-powerful motor will quietly open and close large doors with ease due to the 2HPs for faster openings. *Ultra-Quiet Garage Door Opener*, Ryobi Power Tools, https://www.ryobitools.com/power-tools/products/details/802 (last accessed June 23, 2016). **APP ENHANCED** Connect your smartphone to the RYOBI Garage Door Opener right out of the box. No additional purchase, just visit the Google Play or Apple app stores. • Control your garage door from anywhere you have wireless signal |

|  |  |
|---|---|
|  | - Monitor your garage door remotely<br>- Get enhanced functionality out of your RYOBI Garage Door Opener Modules<br><br>*Module System*, http://ryobitools.com/gdo/module-system/#app-enhanced (last accessed June 23, 2016). |
| a remote input/output unit connected to the controller and remote therefrom for receiving user inputs and for displaying <mark>status of portions of the barrier movement operator</mark>; | Defendants' advertising and product information show how the Accused Controller Products meet this claim element:<br><br><br>WIFI MODE (Front)<br><br>Internal Photos, Application for Equipment Authorization, FCC ID VMZGD200, *available at* https://www.fcc.gov/general/fcc-id-search-page (red boxes and annotations in original).<br><br>**APP ENHANCED**<br>Connect your smartphone to the RYOBI Garage Door Opener right out of the box. No additional purchase, just visit the Google Play or Apple app stores.<br>- Control your garage door from anywhere you have wireless signal<br>- Monitor your garage door remotely<br>- Get enhanced functionality out of your RYOBI Garage Door Opener Modules<br><br>*Module System*, http://ryobitools.com/gdo/module-system/#app-enhanced (last accessed June 23, 2016). |



*Ryobi Garage Door Opener Module System,*
http://ryobitools.com/gdo/ (last accessed June 23, 2016).

| the controller for identifying <mark>faults in the operation of the barrier movement operator</mark>; and | Product testing shows how the Accused Controller Products meet this claim element: Plaintiff tested the Accused Controller Products by placing an obstacle that would prevent the garage door from closing, and received the following messages on the app. |
|---|---|









| | |
|---|---|
| <mark>apparatus for communicating the identities of faults</mark> in the operation of the barrier movement operator to the remote input/output unit and for displaying <mark>the identified faults</mark> at the remote input/output unit. | Defendants' advertising and product information show how the Accused Controller Products meet this claim element: |



WIFI MODE (Front)

Internal Photos, Application for Equipment Authorization, FCC ID VMZGD200, *available at* https://www.fcc.gov/general/fcc-id-search-page (red boxes and annotations in original).

Product testing shows how the Accused Controller Products meet this claim element:  Plaintiff tested the Accused Controller Products by placing an obstacle that would prevent the garage door from closing, and received the following messages on the app.









53.     All Defendants have been placed on notice of the '611 patent at least as early as the filing of this First Amended Complaint.

54.     Defendants have also induced and/or are inducing the infringement of the '611 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products and the Ryobi app.  These products, as provided by Defendants to their customers and used as intended and instructed, infringe the '611 patent and Defendants have

known of this infringement since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants. Defendants sold and/or offered for sale one or more of these products, and are continuing to do so to retailers, specifically intending to actively encourage them to sell the infringing devices for use in the United States in a manner that Defendants know to be infringing. Defendants have also sold and/or offered for sale one or more of these products, and are continuing to do so, to end users and others, specifically intending to actively encourage them to use the infringing devices in the United States in a manner that Defendants know to be infringing. *See, e.g.,* Defendants' marketing of the Accused Controller Products and the Ryobi app as depicted in the claim charts above.

55.     Defendants have also contributed to and/or are contributing to the infringement of the '611 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products and the Ryobi app. Defendants have made and/or sold these products with knowledge that these products are especially designed for use as an apparatus for use in a patented process and are not staple articles of commerce suitable for substantial noninfringing use. For example, among other things, Defendants actively and knowingly sell these products and provide the manuals and other documentation for these products to customers and others for use as a component of a patented process. These products are especially designed for use as an apparatus in a patented process, constitute a material part of the invention, are sold by Defendants for the designed use, and are not a staple article of commerce suitable for substantial noninfringing use. On information and belief, Defendants' customers and consumers have used these products in the United States in this manner and infringed the '611 patent.

56.     As a result of Defendants' infringement of the '611 patent, Plaintiff has suffered and will continue to suffer damages. Plaintiff is entitled to recover from Defendants the damages adequate to compensate for such infringement, in an amount to be determined at trial.

57.     Defendants' acts of infringement of the '611 patent herein have been committed and are being committed with full knowledge of Plaintiff's rights in the patent.  On information and belief, Defendants have acted and are continuing to act despite an objectively high likelihood that their actions constituted direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants.  Defendants' acts constitute willful and deliberate infringement, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

58.     Defendants' acts of infringement have caused and will continue to cause irreparable harm to Plaintiff, for which there is no adequate remedy at law, entitling Plaintiff to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, CGI prays that this Court enters judgment and provides relief as follows:

A.     That Defendants have infringed and are infringing the Asserted Patents, namely, the '336 patent, the '319 patent, and the '611 patent;

B.     That Defendants have induced, and are inducing, infringement of the Asserted Patents;

C.     That Defendants have contributed to, and are contributing to, infringement of the Asserted Patents;

D.     That Defendants have willfully infringed, and are willfully infringing, the Asserted Patents;

E.     That the Asserted Patents are valid and enforceable;

F.     That Defendants, their officers, agents, and employees, and those persons in active concert of participation with any of them, and their successors and assigns be permanently

enjoined from infringement of the Asserted Patents, including but not limited to an injunction against making, using, offering to sell, and selling within the United States, and importing, and importing into the United States, and products covered by the Asserted Patents;

G. For an accounting for any infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

H. That Defendants be ordered to account for and pay to CGI the damages resulting from Defendants' infringement of the Asserted Patents, including lost profits, together with interest and costs, and all other damages permitted by 35 U.S.C. § 284, including enhanced damages up to three times the amount of damages found or measured, but in any event no less than a reasonable royalty;

I. That this action be adjudged an exceptional case and CGI be awarded its attorneys' fees, expenses and costs in this action pursuant to 35 U.S.C. § 285; and

J. That CGI be awarded such other equitable or legal relief as this Court deems just and proper under the circumstances.

## <u>JURY DEMAND</u>

CGI demands trial by jury on all issues so triable.

Dated:  July 1, 2016          By: */s/ Katherine Vidal*         
Katherine Vidal
vidal@fr.com
Matthew McCullough
mccullough@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street., Suite 500
Redwood City, California 94063
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

Benjamin C. Elacqua
elacqua@fr.com
(admitted Pro Hac Vice)
Michael Rueckheim
rueckheim@fr.com
FISH & RICHARDSON PC
1221 McKinney Street, Suite 2800
Houston, Texas 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Maria Elena Stiteler
stiteler@fr.com
(admitted Pro Hac Vice)
FISH & RICHARDSON P.C.
60 S. Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Nicole L. Little (IL 6297047)
nlittle@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY LLP
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

ATTORNEYS FOR PLAINTIFF
THE CHAMBERLAIN GROUP, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the following were served with a copy of this

document via ECF on July 1, 2016 per Local Civil Rule 5.5:

Jason C. White
jwhite@morganlewis.com
Nicholas A. Restauri
nicholas.restauri@morganlewis.com
Sanjay K. Murthy
sanjay.murthy@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Phone: (312) 324-1775
Facsimile: (312) 324-1001

/s/ *Katherine Vidal*
Katherine Vidal
*Attorney for Plaintiff The Chamberlain Group, Inc.*